885 F.2d 101
 Theresa SCHALL, on behalf of herself and all others
similarly situated, Appellant,
v.
John P. JOYCE, Prothonotary of Allegheny County,
Pennsylvania, in his Official Capacity, Eugene Coon, Sheriff
of Allegheny County, Pennsylvania, in his Official Capacity,
and National Builders and Acceptance Corporation
v.
Chief Justice Robert N.C. NIX, and Justices of the Supreme
Court of Pennsylvania, Rolf Larsen, John P. Flaherty, James
T. McDermott, Stephen A. Zappala, Nicholas P. Papadakos,
Juanita Kidd Stout, and Nancy Sobolevitch, Administrator of
the Supreme Court of Pennsylvania, and Charles Starrett,
Administrator of the Common Pleas Court of Allegheny Co.,
Pa., Third Party Defendants.
 No. 88-3512.
 United States Court of Appeals,
Third Circuit.
 Submitted Pursuant to Rule 12(6)
Dec. 6, 1988.
 Decided Sept. 15, 1989.
Rehearing and Rehearing In Banc Denied Oct. 16, 1989.
As Amended Nov. 24, 1989.
 
 Catherine T. Martin, M. Thomas Murray, Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for appellant.
 Martin M. Scoratow, Scoratow & Dudik, Pittsburgh, Pa., for Nat. Builders & Acceptance Corp.
 James R. Fitzgerald, Pittsburgh, Pa., for John P. Joyce Prothonotary of Allegheny County, Pa.
 Norman Paul Wolken, Pittsburgh, Pa., for Eugene L. Coon.
 Howard M. Holmes, Charles W. Johns, Administrative Office of Pennsylvania Courts, Philadelphia, Pa., for Nix, Larsen, Flaherty, McDermott, Zappala, Papadakos, Stout Sobolevitch and Starrett.
 Before SLOVITER, BECKER, Circuit Judges, and BARRY,* District Judge.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 The plaintiff in this case, Theresa Schall, brought suit in federal district court to challenge the constitutionality of Pennsylvania's confession of judgment procedures and to have a judgment entered against her in state court by confession marked satisfied. The district court stayed consideration of the suit pending resolution of proceedings instituted by Schall in state court to set aside the judgment. The district court's terse opinion did not explain which of the several federal abstention doctrines justified a stay. This appeal presents two principal questions. First, is the district court's stay order appealable under 28 U.S.C. Sec. 1291 (1982)? Under the authority of Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), we hold that it is. Second, should the district court's order be affirmed under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny? Under the authority of Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), we hold that it should.
 
 I. PROCEDURAL HISTORY
 A. The Federal Court Complaint
 
 2
 On February 25, 1988, Schall filed a complaint in the district court for the Western District of Pennsylvania. Named as defendants were John P. Joyce, the Prothonotary of Allegheny County; Eugene L. Coon, the Sheriff of Allegheny County; and National Builders and Acceptance Corporation [hereinafter "NBAC"], a mortgage company. The complaint alleges that Schall purchased a home in 1968, that it was titled solely in her name, and that she first learned that NBAC had a mortgage against her home in 1981 from a lawyer preparing her will. The complaint further alleges that Schall called NBAC to learn about the details of this mortgage and was told that the mortgage had been taken in 1980 to secure a business loan given to her husband, from whom she has been separated since January 1, 1979. Additionally, the complaint alleges that Schall has never had any connection with her husband's business, that she never received any of the loan proceeds, never made any loan payments and repeatedly told NBAC that she never signed the mortgage, and that what purports to be her signature on the mortgage is a forgery.
 
 
 3
 The complaint also alleges that on February 6, 1984, NBAC entered a $21,699.12 judgment by confession against Schall in the Allegheny County Court of Common Pleas on a $100,000 note executed simultaneously with the mortgage, and that on December 3, 1987, NBAC filed with the Allegheny County Prothonotary's office a praecipe for writ of execution on the confessed judgment. The complaint goes on to aver that Schall never signed the note, although, as with the mortgage, a signature purporting to be hers appears on it, witnessed by her husband. According to the complaint, the Prothonotary's office issued the writ, and the Allegheny County Sheriff's office, pursuant to the writ, listed her house for Sheriff's sale on March 7, 1988 to permit NBAC to collect on the confessed judgment. Finally, the complaint alleges that, having never received notice of the entry of the confession of judgment, Schall first learned of its existence when the Sheriff served her notice that her house was listed for sale in execution of the judgment.
 
 
 4
 Against all defendants, the complaint asserts a claim under 42 U.S.C. Sec. 1983 (1982) for violation of the fourteenth amendment of the United States Constitution. Against NBAC only, the complaint asserts claims under the Truth in Lending Act, Pub.L. No. 90-321, 82 Stat. 146 (1968) (codified as amended in scattered sections of 15 U.S.C.A. Secs. 1601-1667e (West 1982 & Supp. 1989)); under Pa.Stat.Ann. tit. 41, Sec. 407 (Purdon Supp.1989); and under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa.Stat.Ann. tit. 73, Secs. 201-1 to 201-9.2 (Purdon Supp.1989). The requested relief includes a declaratory judgment that the defendants had violated the laws under which Schall asserted claims; rescission of the alleged transactions between Schall and NBAC; an order that the NBAC mortgage recorded against Schall's property and the confessed judgment against her be marked satisfied; monetary relief; costs and attorneys' fees; and an injunction enjoining defendants from entering confessed judgments in violation of due process. In addition, Schall requested that the district court certify her challenge to the statutory confession of judgment procedure as a class action brought on behalf of herself and all Pennsylvania residents who have had or may have judgments by confession entered against them.
 
 B. The Post-Complaint, Pre-Stay Proceedings
 
 5
 Schall requested a temporary restraining order to prevent the Sheriff's sale of her home. On February 26, 1988, the district court held a hearing on the TRO request and directed Schall to go to state court to seek a stay of the Sheriff's sale and to try to open or strike the confessed judgment entered against her by NBAC in that forum. Schall thereupon filed a petition in the Allegheny County Court of Common Pleas to open or strike the confessed judgment; on March 1, 1988, the state court stayed the execution of the judgment. Schall's petition purported to limit the scope of the state court suit to eliminating the judgment against her so as to allow her to proceed with her federal claims in federal court; only Schall and NBAC were parties in the state court action. On March 3, 1988, the district court denied Schall's TRO motion in light of the state court stay.
 
 
 6
 Defendant Joyce then filed a third-party complaint against each Justice of the Pennsylvania Supreme Court, on the theory that they had promulgated the procedural rules challenged by Schall, and against Nancy M. Sobolevitch, the Administrator of the Pennsylvania Supreme Court, and Charles Starrett, the Administrator of the Common Pleas Court of Allegheny County, on the theory that they are the designated parties under the law to be notified of the unconstitutionality of those rules. The third party defendants, Joyce, and NBAC each filed a motion to dismiss. On May 13, 1988, Schall formally moved for class certification.C. The Stay Order
 
 
 7
 On June 28, 1988, the district court issued the stay order which Schall has appealed. The order recited the brief procedural history of the litigation and noted that the rule to show cause why the confessed judgment should not be opened or stricken before the Court of Common Pleas was still pending. After its recitation of procedural history, the district court stated the following:
 
 
 8
 After consideration of the motion for class certification, and the briefs of defendants filed in opposition thereto, the court concludes that all proceedings in the federal court action should be stayed pending resolution of the state court action.
 
 
 9
 It is, accordingly, ORDERED that all proceedings in the above-captioned action be, and hereby are, stayed pending the resolution of the state court action at docket number GD 84-2077 [the confession of judgment proceeding] in the Court of Common Pleas of Allegheny County, Pennsylvania.
 
 
 10
 Dist. Ct. Order at 2-3 (June 28, 1988). The district court did not explain why its stay pending resolution of the state court action was appropriate. While this appeal was pending, on June 8, 1989, the Court of Common Pleas opened the judgment that had been entered against Schall. We consider the consequences of this action in Part III infra.
 
 II. APPELLATE JURISDICTION
 
 11
 Title 28 U.S.C. Sec. 1291 (1982) provides that courts of appeals may review only "final" decisions of the district courts. A party generally may not take an appeal under section 1291 until there has been a decision by the district court that " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Van Cauwenberghe v. Biard, 486 U.S. 517, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988) (citation omitted). This general rule would suggest that the district court's stay order is not an appealable final order because it stays rather than terminates the suit.
 
 
 12
 In Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), however, the Supreme Court held that, notwithstanding this general rule, a district court stay order grounded on the pendency of similar litigation in state court may be appealable under section 1291. See 460 U.S. at 8-10, 103 S.Ct. at 932-34 (holding final for section 1291 purposes a stay under doctrine of Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). The Court concluded that the stay in that case effectively deprived the plaintiff of its right to a federal forum because once the state court adjudicated the issues in the case, a federal court would be bound to honor those determinations as res judicata. See 460 U.S. at 10, 103 S.Ct. at 934.
 
 
 13
 The Court in Moses H. Cone also relied upon (and reaffirmed) its holding in Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), that a district court stay pursuant to the doctrine of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is immediately appealable under section 1291. See 460 U.S. at 9-10, 103 S.Ct. at 933-34. Although entered with the expectation that the federal litigation will resume in the event that the plaintiff does not obtain relief in state court on state law grounds, a district court order staying a suit under the Pullman abstention doctrine is final because the plaintiff is "effectively out of federal court." Id. at 9 n. 8, 103 S.Ct. at 933 n. 8.
 
 
 14
 The Court did, however, reaffirm the "usual rule" that "a stay is not ordinarily a final decision for purposes of Sec. 1291." Id. at 10 n. 11, 103 S.Ct. at 934 n. 11. The Court distinguished between stay orders that "merely ... have the practical effect of allowing a state court to be the first to rule on a common issue" (such as an "ordinary delay in the interest of docket control") and stay orders whose "sole purpose and effect ... are precisely to surrender jurisdiction of a federal suit to a state court." Id. Only the latter type of stay order is immediately appealable. Moses H. Cone thus stands for the proposition that a nontentative, final decision to stay federal litigation "under Colorado River, abstention, or a closely similar doctrine" is immediately appealable under section 1291 where "the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum." Id. Cf. The Nemours Foundation v. Manganaro Corp., 878 F.2d 98, 100-01 (3d Cir.1989) (declining to apply Moses H. Cone principle in context of a district court order certifying questions of state law to a state court in a diversity case).
 
 
 15
 We conclude that the district court's stay order is immediately appealable in this case. First, there is no indication that the order is tentative in nature; as in Moses H. Cone, "there is no basis to suppose that the District Judge contemplated any reconsideration of his decision to defer to the parallel state-court suit." 460 U.S. at 12-13, 103 S.Ct. at 935.
 
 
 16
 Second, although it is a more difficult issue in light of the opaqueness of the district court's opinion, we conclude that the district court stayed the suit to relegate the plaintiff to state court rather than to exercise control over its docket. Although the district court never stated the basis for its decision to stay, the failure to explain the basis for an order cannot by itself make that order unreviewable. The order on its face stays the federal proceedings pending conclusion of the state proceedings. Moreover, the district court had, prior to its issuance of the stay order, evinced an interest in having Schall pursue her claim in state court notwithstanding the presence of class action allegations and federal constitutional and statutory issues in her federal complaint. That Schall filed pleadings in state court at all was due to the district court's earlier instructions for her to do so. When viewed in this light, it is even more clear that the point of the district court's stay order was to surrender its jurisdiction to the state court.
 
 
 17
 Third, although the state court suit does not involve the full panoply of issues raised by Schall in her federal court suit, this is not a case in which the overlap between state and federal suits is so incidental that the plaintiff is effectively prevented from litigating in federal court only an unessential part of her federal suit. The issues in the state court suit--whether the defendants complied with Pennsylvania confession of judgment law and whether Schall is correct in alleging that she never signed the note that formed the basis for the judgment--are certainly not unessential to her federal suit. Rather, they constitute the heart of the factual matrix upon which Schall's federal court suit is founded.
 
 
 18
 Defendants argue that Moses H. Cone has been overturned by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). Gulfstream, however, expressly reaffirmed Moses H. Cone, see 108 S.Ct. at 1137, and held merely that a district court order denying a motion to stay or dismiss an action when a similar suit is pending in state court is not immediately appealable under section 1291. See id. at 1144.
 
 
 19
 Because we are convinced that "the object" of the district court's stay was "to require all or an essential part of the federal suit to be litigated in a state forum," Moses H. Cone, 460 U.S. at 10 n. 11, 103 S.Ct. at 1142 n. 11, we conclude that the district court's stay order was an abstention order that is final within the meaning of 28 U.S.C. Sec. 1291. We therefore have jurisdiction over this appeal.
 
 III. MOOTNESS
 
 20
 One object of Schall's suit in the district court was to have the judgment by confession that had been entered against her opened so that she could contest the judgment. See Pa.R.Civ.P. 2959(e). Our check of the state court docket entries brought to our attention a June 8, 1989 order of the Court of Common Pleas opening the judgment that had been entered against Schall. Although the parties have not formally advised us of this fact, this grant of partial relief raises the question whether Schall's suit in federal court has become moot. We conclude that it has not.
 
 
 21
 The district court's abstention order is still in effect. The order stated that the federal suit would be stayed "pending the resolution" of the suit in the state court. The state court suit has not yet reached final judgment since the only action taken by the state court has been to open the judgment by confession. Hence, the state court has determined only that Schall has produced "evidence ... which in a jury trial would require the issues to be submitted to the jury." Pa.R.Civ.P. 2959(e). The state court has not determined whether Schall actually owes NBAC the money that it claims; that important issue remains to be adjudicated there.
 
 
 22
 Nor has the underlying federal court suit been mooted. The state court suit will not necessarily displace all of the issues in the federal court suit, which is broader in scope. Moreover, although a hearing is an element of the relief available in a procedural due process suit, the Supreme Court has held that denial of the process due is itself compensable by damages under 42 U.S.C. Sec. 1983. See Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Thus, although Schall has received a hearing, she may still be entitled to monetary relief if due process required that she be given a hearing more timely than the one that she ultimately received.
 
 IV. ABSTENTION
 
 23
 Schall has brought suit in federal court to challenge a judgment of the Allegheny County Court of Common Pleas. We turn to the question whether, on the facts of this case, the district court's abstention was appropriate under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), one of the abstention doctrines that appellees contend warrants an affirmance of the district court's order.[1] We accept as true the allegations contained in the plaintiff's complaint and review the district court's decision to abstain for abuse of discretion. See Kentucky West Virginia Gas Co. v. Pennsylvania PUC, 791 F.2d 1111, 1115 & n. 4 (3d Cir.1986).
 
 
 24
 Abstention under Younger is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. See Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); Kentucky West Virginia Gas Co., 791 F.2d at 1116. Even if the necessary three predicates exist, however, Younger abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted. See Middlesex, 457 U.S. at 435, 102 S.Ct. at 2523; Younger, 401 U.S. at 49-50, 53-54, 91 S.Ct. at 753, 755.
 
 A.
 
 25
 It is clear that there are ongoing proceedings in state court, the Allegheny County Court of Common Pleas, satisfying the first prong of the Middlesex test. The state court entered a judgment against Schall pursuant to Pa.Stat.Ann. tit. 41, Sec. 407; Schall subsequently sought relief from the judgment pursuant to Pa.R.Civ.P. 2959(a); and the state court then stayed execution of that judgment pending disposition of the petition pursuant to Pa.R.Civ.P. 2959(b). Recently, the state court has opened the judgment and briefs have been submitted as to the remaining issues in the case. In her federal court action Schall seeks to bypass these state proceedings.
 
 B.
 
 26
 It is also clear that the state proceedings afford an adequate opportunity to raise federal claims, satisfying the third prong of the Middlesex test. The Supreme Court has held that "the burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.' " Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987) (citation omitted). Schall has failed to meet this burden; indeed, Schall does not even discuss the issue in her brief. In addition, Pa.R.Civ.P. 2959, which governs the procedure for opening judgments by confession, does not, on its face, contain any limitation on the issues that a petitioner can assert as necessitating the opening of the judgment.
 
 
 27
 Rule 2959(a) states that "[r]elief from a judgment by confession shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition." Rule 2959(e) states that "[i]f evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment." And even if there were some ambiguity in Rule 2959, the Supreme Court has held that
 
 
 28
 [w]e cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims.... Accordingly, when a litigant has not attempted to present his federal claims in related state court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.
 
 
 29
 Pennzoil, 107 S.Ct. at 1528. Under this standard we cannot conclude that Pennsylvania law bars Schall from presenting her federal claims in the state court proceedings. Indeed, the Superior Court of Pennsylvania has reviewed a due process challenge to the confession of judgment procedures in an appeal that arose from a denial of a petition to open a confessed judgment. See North Penn Consumer Discount Co. v. Shultz, 250 Pa.Super. 530, 535-37, 378 A.2d 1275, 1277-78 (1977).
 
 
 30
 One complication with respect to this issue is that Schall has chosen to proceed in state court without raising her federal claims there. This strategy may bar the Court of Common Pleas from considering those claims, as Rule 2959(a) states that "[a]ll grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition." In light of the Rule 2959(a) bar, one might argue that the state proceedings do not afford Schall an adequate opportunity to raise her federal claims. The Supreme Court, however, faced a similar dilemma in Pennzoil and held that one "cannot escape Younger abstention by failing to assert ... remedies in a timely manner [in state court]." 107 S.Ct. at 1529 n. 16. See also Huffman v. Pursue, Ltd., 420 U.S. 592, 611 n. 22, 95 S.Ct. 1200, 1211 n. 22, 43 L.Ed.2d 482 (1975). The question therefore is not whether Schall may presently raise her federal claims in state court but whether she could have done so had she complied with state procedural rules. As to the latter question, we have already concluded that Schall has not met her burden of proving that she could not have raised her federal claims in the Court of Common Pleas.
 
 C.
 
 31
 Whether the state proceedings implicate an important state interest, and hence satisfy the second prong of the Middlesex test, presents a much more difficult question. The Supreme Court has held that this prong is satisfied in a civil case "if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." Pennzoil, 107 S.Ct. at 1526. The question before us, therefore, is whether Pennsylvania's interest in the state court suit between Schall and NBAC is sufficiently important that exercise of the federal judicial power would amount to disregard of the comity that we owe Pennsylvania. Pennzoil offers us guidance on this question.
 
 
 32
 Pennzoil had obtained an $11 billion jury verdict against Texaco in a Texas state court. Under Texas law the judgment that would follow as of course would give Pennzoil the right (1) to obtain a writ of execution permitting it to levy execution on Texaco's assets unless Texaco posted a sufficient bond and (2) to secure liens on Texaco's real property in Texas, without regard to the posting of a bond. Before judgment on the verdict was entered, Texaco brought suit in federal district court to enjoin Pennzoil from taking any action to enforce the judgment, alleging that the Texas proceedings violated rights secured to Texaco by the Constitution and various federal statutes. After the judgment was entered in state court, the district court issued a preliminary injunction against enforcement of the judgment, holding that the Texas bond and lien provisions violated due process by arbitrarily depriving Texaco of the right to appeal. The Court of Appeals for the Second Circuit substantially affirmed.
 
 
 33
 The Supreme Court reversed. The Court held that Younger required the district court to abstain from adjudicating Texaco's complaint. It therefore ordered the injunctive relief vacated and the action dismissed. Texaco had argued that the district court's injunction did not implicate a sufficiently important state interest to warrant Younger abstention, but the Court rejected this argument, relying upon Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), which held that a federal court should abstain from adjudicating a challenge to a state's contempt process. The Court in Juidice had concluded that the contempt power was sufficiently important to justify abstention because it "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory." 430 U.S. at 336 n. 12, 97 S.Ct. at 1217 n. 12. In Pennzoil, the Court concluded that
 
 
 34
 [Juidice ] rests on the importance to the States of enforcing the orders and judgments of their courts. There is little difference between the State's interest in forcing persons to transfer property in response to a court's judgment and in forcing persons to respond to the court's process on pain of contempt. Both Juidice and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts.
 
 
 35
 107 S.Ct. at 1527.
 
 
 36
 The Supreme Court in Pennzoil noted, however, that the Juidice "enforcing ... orders and judgments" rationale did not imply "that Younger abstention is always appropriate whenever a civil proceeding is pending in a state court." 107 S.Ct. at 1527 n. 12. The Court reasoned that the state had a stronger "interest in protecting 'the authority of the judicial system, so that its orders and judgments are not rendered nugatory' " than in serving as an adjudicator of private disputes. Id. (quoting Juidice, 430 U.S. at 336 n. 12, 97 S.Ct. at 1217 n. 12). Consequently, Pennzoil bars a federal court from granting relief from unconstitutional state court civil proceedings only in cases in which the federal relief would render the state court's orders or judgments nugatory, as long as the other two Middlesex prongs are satisfied and there are no exceptional circumstances.
 
 
 37
 Pennzoil was the first Supreme Court case to hold that Younger can sometimes bar an injunction against a pending civil action between two private parties. Although this Court has previously held that abstention would not be appropriate in such a circumstance, see, e.g., Williams v. Red Bank Board of Education, 662 F.2d 1008, 1019 (3d Cir.1981) ("[W]here the pending state proceeding is a privately-initiated one, the state's interest in that proceeding is not strong enough to merit Younger abstention, for it is no greater than its interest in any other litigation that takes place in its courts."), these prior decisions, to the extent that they conflict with Pennzoil, have been overruled by that case.
 
 
 38
 Professor Tribe, who represented Pennzoil in the Supreme Court, has subsequently opined that after Pennzoil "there ... appears to be no principled way to prevent the application of the Younger doctrine to preclude federal litigation of any threatened federal interest where the litigant is involved in a pending state judicial proceeding that is adequate to ventilate the federal claim...." L. Tribe, American Constitutional Law Sec. 3-30, at 207 (2d ed. 1988). We disagree. The Court in Pennzoil itself stated that its opinion did "not hold that Younger abstention is always appropriate whenever a civil proceeding is pending in a state court." 107 S.Ct. at 1527 n. 12. Pennzoil 's limiting principle is its focus on the special interest that a state has in enforcing the orders and judgments of its courts. And "[t]he very purpose of Sec. 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights--to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' " Mitchum v. Foster, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972) (quoting Ex parte Virginia, 100 U.S. 339, 346, 25 L.Ed. 676 (1879)). Hence the Williams v. Red Bank principle that the state's interest in litigation initiated by private persons is less weighty than other state interests protected by Younger may still have some room to operate, as it suggests that the federal courts may, in an appropriate case, interfere with an ongoing privately initiated state proceeding in which the state court has not yet rendered judgment even if Younger would preclude such interference in a case in which the state had already entered a judgment.
 
 
 39
 The instant case resembles the Pennzoil case in several respects. In both cases, a judgment was entered in state court and the person against whom the judgment was entered sued in a federal district court to "challenge[ ] ... the processes by which the State compels compliance with the judgments of its courts." 107 S.Ct. at 1527. Rather than seeking relief from the bond requirements of Texas law in the Texas state courts, Texaco sued in federal court to have this bond requirement be enjoined as unconstitutional; rather than seeking relief from the confession of judgment procedures in the Pennsylvania state courts, Schall sued in federal court to have these procedures be declared unconstitutional. In both cases, the parties sought relief in federal court after a judgment had been entered, and in both cases, the relief sought in the federal court would have rendered nugatory, at least to some extent, the effect that the state court judgment would ordinarily have had under state law. Indeed, the type of relief sought in the instant case--that the confessed judgment be marked satisfied--has a greater effect on the ability of the state to enforce its judgment than the type of relief granted by the district court in Pennzoil.
 
 
 40
 The instant case, however, is dissimilar to Pennzoil in other respects that might be thought to weigh against abstention. First, the state court judgment in the instant case was an ex parte judgment by confession rather than a judgment after a hearing or trial. Second, Schall sought declaratory relief. Third, Schall has requested that the district court certify the case as a class action brought on behalf of herself and all Pennsylvania residents who have had or may have judgments by confession entered against them. And fourth, the state court judgment in this case has been opened by the state courts.
 
 
 41
 In the end, however, we conclude that this case is sufficiently similar to Pennzoil that the district court's abstention order must be affirmed. Pennzoil held that even if the state court proceeding was between two private parties, the state's interest in ensuring that its orders and judgments not be rendered nugatory was sufficient to require Younger abstention. Although the judgment in the instant case was ex parte, we have no basis for concluding that the state's interest in it is weaker than the state's interest in a judgment after a hearing. In both cases, the state has seen fit to make its full power available to execute the judgment.
 
 
 42
 The request for declaratory relief does not distinguish Pennzoil. In Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Supreme Court held that Younger abstention was fully applicable to declaratory relief because such "relief ... has virtually the same practical impact as a formal injunction would." 401 U.S. at 72, 91 S.Ct. at 768. Although the Court noted that "[t]here may be unusual circumstances" in which declaratory relief would be available even though Younger barred the issuance of an injunction, the Court held that "[o]rdinarily, ... the practical effect of the two forms of relief will be virtually identical, and the basic policy against federal interference with pending state [proceedings] will be frustrated as much by a declaratory judgment as it would be by an injunction." Id. at 73, 91 S.Ct. at 768.
 
 
 43
 As we have explained, application of Pennzoil leads to the conclusion that it would be inappropriate for the federal court to proceed on an injunctive claim to render the state judgment nugatory. Consequently, allowing the suit to go forward on the claim for declaratory relief, which would have the same effect, is also impermissible, as Schall has provided no reason why this case involves "unusual circumstances," Samuels, 401 U.S. at 73, 91 S.Ct. at 768, such that the concomitant bar on declaratory relief does not also apply.
 
 
 44
 Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), held that Samuels does not bar declaratory relief when no state proceeding is pending prior to the initiation of the federal suit, but the state suit in the instant case had proceeded to judgment prior to the commencement of the federal suit. The Supreme Court has clearly stated that a case which has proceeded to judgment is still pending for Younger purposes as long as appellate remedies have not been exhausted. " '[A] necessary concomitant of Younger is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court.' " New Orleans Public Service, Inc. v. Council of City of New Orleans, --- U.S. ----, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989) (citation omitted) (brackets in original). Because proceedings continue in the state court after a judgment has been opened, the fact that the state court has subsequently opened the judgment by confession does not relieve the federal courts of a duty to abstain.
 
 
 45
 In an effort to fend off the abstention argument, Schall seeks to divide her case into a part challenging the state judgment (with respect to which, she concedes, abstention might be appropriate) and a part presenting a facial attack on the statute as it may apply to her in the future (with respect to which, she argues, abstention would not be appropriate). The Supreme Court, however, has previously indicated that such a strategy cannot be used to avoid application of the Younger doctrine. In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), for example, one of the plaintiffs was a doctor against whom two convictions under the statute at issue in Roe were pending. The doctor sought "to distinguish his status as a present state defendant from his status as a 'potential future defendant' and to assert only the latter." 410 U.S. at 126, 93 S.Ct. at 713. Citing Samuels v. Mackell, the Supreme Court stated that it could "see no merit in that distinction." Id. See also Doran v. Salem Inn, Inc., 422 U.S. 922, 929, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975) (Corporation against whom summons was issued for past violations of an ordinance proscribing topless dancing could not obtain declaratory or injunctive relief with respect to future application of the ordinance.).
 
 
 46
 Although the Court in Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), affirmed a district court order enjoining the enforcement of a statute under which the plaintiff had been previously convicted, the Court held that such relief was appropriate only because the suit was "in no way 'designed to annul the results of a state trial' since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate [the plaintiff's] constitutional rights." 430 U.S. at 711, 97 S.Ct. at 1433. The Court noted that the plaintiff had "already sustained convictions and ha[d] served a sentence of imprisonment for his prior offenses[, and did] not seek to have his record expunged, or to annul any collateral effects those convictions may have...." Id. Cf. Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 n. 3 (3d Cir.1982) (suggesting that Younger abstention is inappropriate when the plaintiff seeks relief "only" against future enforcement of a statute). By contrast, the plaintiff in the instant case seeks to have the federal courts mark her state judgment as satisfied.
 
 
 47
 Nor does Schall's motion for class certification serve to distinguish Pennzoil. Texaco too could have added to its papers in the district court a motion for class certification (on behalf of all defendants for whom posting a bond on appeal would exceed their financial resources). We feel confident that such a motion would not have changed the result in Pennzoil in light of the Supreme Court's strong aversion to permitting Texaco to challenge the state court judgment in federal district court. Cf. Trainor v. Hernandez, 431 U.S. 434, 447 n. 11, 97 S.Ct. 1911, 1929 n. 11, 52 L.Ed.2d 486 (1977) (suggesting that a named plaintiff with respect to whom Younger abstention would be appropriate may not represent a class that includes persons not yet sued or prosecuted). Whether abstention would have been appropriate in the instant case had the district court already certified a class is a question that we leave to another day. Cf. id.
 
 
 48
 For the foregoing reasons, we conclude that the state interest prong of the Middlesex test, like the other two prongs discussed in Parts IV-A and IV-B, has been satisfied.
 
 D.
 
 49
 Notwithstanding the satisfaction of the three Middlesex prongs, Younger abstention would not have been appropriate if Schall had established that the state proceedings had been undertaken in bad faith, for the purpose of harassment, or that some extraordinary circumstance made abstention inappropriate. Schall has not even attempted, however, to meet that burden.
 
 E.
 
 50
 Although we have already explained why we believe Younger abstention to be appropriate in the case at bar, a few additional comments are in order in light of Judge Sloviter's dissenting opinion. Judge Sloviter states that "the majority [has] substantially shift[ed] the allocation of business between the federal and state courts" and that "the majority's analysis leaves only the proverbial needle's eye in which to find Younger inapplicable." Post Typescript at 115. We respectfully disagree. This opinion simply does not have the consequences described by the dissent and should not be so read by the bar.
 
 
 51
 Pennzoil applied the Younger doctrine to bar a private defendant in a state tort suit from seeking relief in federal court from an onerous judgment entered against it by the state trial court. Judge Sloviter would have us distinguish Pennzoil from the instant case in part on the ground that the size of the judgment in the Pennzoil case was larger than the size of the judgment entered against Schall in the instant case. We do not believe, however, that the size of the money judgment can serve as a basis for distinguishing the two cases. As Justice Stevens observed in his opinion concurring in the judgment in Pennzoil, "our duty to deal equally with the rich and the poor does not admit of a special exemption for multi-billion-dollar corporations or transactions." 107 S.Ct. at 1538. The majority opinion in Pennzoil never cites the size of the money judgment as a basis for its decision.
 
 
 52
 Judge Sloviter would also have us distinguish the Pennzoil case on the ground that the state proceedings here took less time than the state proceedings in the Pennzoil case. We also find it difficult to draw a principled line between the two cases on that basis as well. The majority opinion in Pennzoil does not cite the length of the state trial court proceedings as a basis for its decision. The Supreme Court jurisprudence in this area seems to turn not on such mundane considerations but on notions of state sovereignty that the Supreme Court has derived from its vision of federal-state relations in our federal system. See Pennzoil, 107 S.Ct. at 1525. Hence, the Supreme Court, only a few weeks ago, reaffirmed the Pennzoil doctrine by reasoning that a party "would demonstrate a lack of respect for the State as sovereign" if it attempted to
 
 
 53
 procure federal intervention by terminating the state judicial process prematurely--forgoing the state appeal to attack the trial court's judgment in federal court. "[A] necessary concomitant of Younger is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court."
 
 
 54
 New Orleans Public Service, Inc. v. Council of City of New Orleans, --- U.S. ----, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989) (citation omitted) (brackets in original).[2]
 
 
 55
 Judge Sloviter also states that the majority opinion "can be used to support abstention almost any time related suits are pending in state and federal courts." Post at 114. To settle any doubt on this score, we expressly reject this broad proposition. The majority opinion does not alter the well-established rule that " 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....' " Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (citation omitted). The presence of two parallel law suits and the prospect of a race to judgment does not run afoul of Younger. What runs afoul of Younger, if each of the three Middlesex prongs is met and absent exceptional circumstances, is for a defendant in state court who has had a judgment entered against her--such as Schall in the instant case--to decline to pursue available state remedies such as an appeal or a motion to open the judgment but to go instead into federal court to have the state judgment entered against her declared void. See supra Typescript at 109.
 
 
 56
 Judge Sloviter also states that we could have affirmed the district court's abstention order under a theory that it is desirable to avoid constitutional adjudications. We respectfully disagree. The availability to a plaintiff of relief under state law does not by itself justify abstention by a federal court even if abstention in such a case would avoid the need to adjudicate a constitutional question. It has been established at least since Home Telephone & Telegraph Co. v. City of Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913), that federal courts have the power to enjoin unconstitutional state action even if such action is illegal under state law and hence remediable in state courts. In rejecting the proposition that state remedies bar federal jurisdiction, the Supreme Court noted that
 
 
 57
 the enforcement of the doctrine would ... render impossible the performance of the duty with which the Federal courts are charged under the Constitution. Such paralysis would inevitably ensue, since the consequence would be that, at least in every case where there was a coincidence between a national safeguard or prohibition and a state one, the power of the Federal court to afford protection to a claim of right under the Constitution of the United States, as against the action of a state or its officers, would depend on the ultimate determination of the state courts, and would therefore require a stay of all action to await such determination.
 
 
 58
 227 U.S. at 284, 33 S.Ct. at 314. And it has been established at least since Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that 42 U.S.C. Sec. 1983 provides a remedy to those injured by unconstitutional state action even if "the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." 365 U.S. at 183, 81 S.Ct. at 482.
 
 
 59
 There exists therefore a large class of cases in which it is well established that federal courts should assume jurisdiction over a case even though relegating the plaintiff to state law remedies would avoid the need to adjudicate a constitutional question. The traditional exception to this rule has been the doctrine of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under that doctrine, if a federal constitutional claim is premised on an unsettled question of state law, the federal court may stay its hand in order to provide the state courts an opportunity to decide the unsettled question of state law and thus avoid the possibility of unnecessarily deciding a constitutional question. See generally Harris County Commissioners Court v. Moore, 420 U.S. 77, 83-84, 95 S.Ct. 870, 875-76, 43 L.Ed.2d 32 (1975). The doctrine " 'contemplates that deference to state court adjudication only be made where the issue of state law is uncertain.' " Lake Carriers' Association v. MacMullan, 406 U.S. 498, 511, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972) (citation omitted).
 
 
 60
 In the instant case, the state law at issue is the Pennsylvania procedure regarding confession of judgment. This procedure, set out by Pa.Stat.Ann. tit. 41, Sec. 407 and the relevant provisions of the Pennsylvania Rules of Civil Procedure, is both the law said to authorize the state action being challenged and that which the plaintiff has challenged as unconstitutional. Neither the defendants nor Judge Sloviter, however, have identified any element of the state law that is unsettled.[3] Since no unsettled question of state law has been identified, abstention under the Pullman doctrine is not appropriate. See Harris, 420 U.S. at 83, 95 S.Ct. at 875; Georgevich v. Strauss, 772 F.2d 1078, 1089 (3d Cir.1985) (in banc), cert. denied, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986).
 
 
 61
 Although there may be some uncertainty as to whether the Prothonotary, the Sheriff, and NBAC adhered to Pennsylvania state law in this case, in the absence of the identification of any unsettled question of law we can only conclude that the uncertainty in this case, if there be any, concerns factual rather than legal questions. The state court is no better qualified to adjudicate these issues than the federal court. Pullman abstention is founded not on the superior ability of state courts to engage in factual inquiry but on the special role that state courts play in our federal system of serving as the final expositors of state law and the concomitant institutional superiority of state courts to federal courts in cases in which Pullman abstention is appropriate. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 415-16, 84 S.Ct. 461, 464-65, 11 L.Ed.2d 440 (1964).
 
 
 62
 For the foregoing reasons, we do not believe that abstention under the Pullman doctrine would have been appropriate in this case. The case of Carey v. Sugar, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976) (per curiam), relied on by Judge Sloviter, is fully consistent with this analysis. In that case, the uncertain question of state law was what inquiry into the merits of the lawsuit the New York attachment statute permitted when a state court decided a motion to vacate an attachment. See 425 U.S. at 77, 96 S.Ct. at 1210. The Supreme Court held that Pullman abstention was appropriate because the New York courts might "construe[ the] statute so as to remove any constitutional problems." Id. at 79, 96 S.Ct. at 1211. In the instant case, by contrast, no unsettled question of state law has emerged. Consequently, we do not believe that abstention would have been warranted in this case under the theory that it is desirable to avoid the adjudication of a constitutional question. To hold otherwise would unnecessarily derogate the well established principles of Home Telephone & Telegraph Co. and Monroe v. Pape.
 
 V. CONCLUSION
 
 63
 For the foregoing reasons, the order of the district court staying the federal action pending resolution of the state court proceedings will be affirmed. Although the district court stayed rather than dismissed Schall's federal suit, a stay rather than a dismissal was appropriate because the class certification motion, a claim of attorneys' fees, or other elements of Schall's suit might leave the district court something to adjudicate even after the conclusion of the state court litigation. See Monaghan v. Deakins, 798 F.2d 632, 635 (3d Cir.1986), aff'd in relevant part, 484 U.S. 193, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988).
 
 
 64
 SLOVITER, Circuit Judge, dissenting.
 
 
 65
 All members of this panel are struggling with this appeal because, as the majority notes, the district court has given us no explanation why it stayed the action and whether it intended the stay to remain in effect after the state court had opened the judgment. The obscurity of the order with which we are dealing affects our appellate jurisdiction as well as our view of the merits. In these circumstances, I would not engage in the speculation which necessarily pervades the majority opinion. Instead, I would remand so that the district court can explain the nature of its order.
 
 
 66
 With respect to jurisdiction, I agree with the majority that when a district court, through use of a stay, has relegated a federal suit to state court, this court has appellate jurisdiction. Unlike the majority, I believe that we have an inadequate basis to conclude that that is what happened here. As the majority notes in its discussion of the mootness issue, "[t]he state court will not necessarily displace all of the issues in the federal court suit, which is broader in scope." Maj. op. at 106. I presume the majority is referring to the fact that in her state court petition to open judgment Schall has made neither the constitutional nor federal statutory claims that she asserts in her federal suit.
 
 
 67
 Were I to speculate on the district court's intent, I would be inclined to the view that the district court, faced with a complaint alleging that Pennsylvania's confession of judgment procedures fail to provide due process protections prior to execution for people such as plaintiff who allege a forged signature on a mortgage and confession of judgment note, believed that plaintiff should test her allegations by seeking a stay in the state court of the execution on her confession of judgment. There is nothing on the record before us or on the district court docket that shows that once the state court opened the judgment any party notified the district court. Thus, there is no reason to conclude that the district court's stay of the federal suit pending resolution of the state court action was done for "the sole purpose and effect ... to surrender jurisdiction of a federal suit to a state court," which was the only type of stay order held to be appealable in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 10-11 n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765 (1983), upon which the majority relies.
 
 
 68
 The majority's insistence on reaching the merits despite its uncertainty as to the basis for the stay order leads it to speculate yet again, this time as to the legal theory on which the district court relied, which the majority theorizes was Younger abstention. My principal objection to the majority's opinion is that it reaches out to sustain abstention on Younger grounds by expanding the holding in Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), so that it can be used to support abstention almost any time related suits are pending in state and federal courts.
 
 
 69
 The state interests that were found in Pennzoil to be "so important that exercise of the federal judicial power would disregard the comity between the States and the National Government," 481 U.S. at 11, 107 S.Ct. at 1526, arose out of Texaco's attempt to avoid posting a bond to secure an $11 billion damage judgment awarded to Pennzoil after the state had already expended substantial time and effort by its personnel and jurors in the course of the still ongoing proceedings. The distinction I make between this case and Pennzoil does not rest on the size of the money judgment, as the majority chooses to characterize it. Much more important is the fact that here the state "proceedings" which took place before the stay consisted merely of the filing of the confession of judgment. If "the state's interest in ensuring that its orders and judgments not be rendered nugatory" is sufficient to require Younger abstention in such a case, maj. op. at 109, then abstention would appear to be necessary in virtually every case in which a state court had entered an order, no matter how inconsequential the state court action is with respect to the concerns of federalism and comity that underlie abstention.
 
 
 70
 Although the majority notes that even the Pennzoil Court eschewed holding "Younger abstention is always appropriate whenever a civil proceeding is pending in state court," 481 U.S. at 14 n. 12, 107 S.Ct. at 1527 n. 12, the majority's analysis leaves only the proverbial needle's eye in which to find Younger inapplicable. The majority proposes that the only room left for exercise of federal jurisdiction in the face of pending state court proceedings is that federal courts may interfere when "the state court has not yet rendered judgment." Maj. op. at 109; but see Pennzoil, 481 U.S. at 24, 107 S.Ct. at 1533 (abstention required even when judgment opened because proceedings continue).
 
 
 71
 Only this term the Supreme Court cautioned against overexpansive readings of Pennzoil. In New Orleans Public Service, Inc. v. Council of City of New Orleans, --- U.S. ----, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Court reversed a federal court abstention order based in part on the pendency of state court proceedings to review actions taken by a state ratemaking body. As Justice Scalia explained:
 
 
 72
 Although our concern for comity and federalism has led us to expand the protection of Younger beyond state criminal prosecutions ... to civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions, see Juidice v. Vail, 430 U.S. 327, 336, n. 12 97 S.Ct. 1211, 1217, n. 12, 51 L.Ed.2d 376 (1977) (civil contempt order); Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 13 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987) (requirement for the posting of bond pending appeal), it has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action. Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.
 
 
 73
 109 S.Ct. 2517-18 (emphasis added) (citations omitted). The confession of judgment order automatically entered but then opened in this case does not represent an order "uniquely in furtherance of the state courts' ability to perform their judicial functions," id., and the mere entry of such an order cannot constitute grounds for abstention, as the majority would hold.
 
 
 74
 The majority's construction of Pennzoil would alter the well-established rules that " 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ...,' " Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (quoting McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)), and that federal courts retain their "virtually unflagging obligation ... to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246.
 
 
 75
 I find it inexplicable that the majority applies Pennzoil so as to substantially shift the allocation of business between the federal and state courts when it could have affirmed the abstention order under the theory that federal courts should attempt to avoid constitutional determinations when the state courts may interpret the state procedures so as to eliminate, or at least to alter materially, the constitutional question presented. The Supreme Court's decision in Carey v. Sugar, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976) (per curiam), directly controls. In Carey, plaintiff had attached a debt owed to defendant pursuant to New York's Civil Practice Laws & Rules (CPLR). The attachment remained unchallenged for nine months until defendant filed a section 1983 suit in federal court contending that the hearing procedures provided by the CPLR to vacate the attachment were constitutionally inadequate.
 
 
 76
 The Supreme Court held that the district court had erred in failing to abstain. Although the CPLR did not explicitly provide that the hearing to vacate would permit consideration of the plaintiff's likelihood of prevailing on the merits, the Supreme Court noted "that [New York's] officials contended below and continue to contend here that New York law does provide an opportunity for a preliminary hearing on the merits of a plaintiff's underlying claim." Id. at 79, 96 S.Ct. at 1211. The Court explained that a decision of the New York courts as a matter of state law could render a decision on the constitutionality of the New York attachment statutes unnecessary. Citing Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Court stated, "If the State construes its statute so as to remove any constitutional problems, friction with the State will have been avoided." Carey, 425 U.S. at 79, 96 S.Ct. at 1211.
 
 
 77
 A comparable situation is presented here. Schall's section 1983 suit contends that the policies and practices of the Allegheny County Prothonotary's and Sheriff's Office do not provide any procedural safeguard to insure due process prior to execution in a confessed judgment. In his brief on appeal, the Prothonotary states that plaintiff "has every opportunity to demonstrate any defect or fault in the procedure by which judgment was entered." Brief of Prothonotary at 8. With respect to Schall's challenge to the Pennsylvania Civil Rules, the Brief for Appellees Chief Justice Nix et al. asserts that the procedure provided allows a debtor to examine the documentation in case s/he wishes to " 'prepare to strike or open the judgment,' " and states that under Rule 2959 petition for relief may be filed and that "[i]f prior grounds for relief are shown, a stay of proceedings on the judgment may be granted and, as experience teaches all practicing lawyers, invariably is granted." Brief for Appellees Nix et al. at 11.
 
 
 78
 The situation here is thus directly comparable to that in Carey. Judge Becker's position that Pullman abstention is inapplicable is particularly puzzling because he joined the majority opinion in Georgevich v. Strauss, 772 F.2d 1078, 1089 (3d Cir.1985) (in banc), cert. denied, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986), holding Pullman abstention was appropriate in light of the defendants' claim that plaintiffs would be accorded precisely those procedures which they sought to obtain through the federal suit. This court also held that there was no reason why Pullman abstention would not be appropriate to an "as applied" challenge to a statutory scheme, id. at 1091, notwithstanding the dissenters' position that the only ambiguity was a statutory gap. Id. at 1097 (Sloviter, J., dissenting). Because these authorities provide a basis for upholding the district court's order under the well-established principle of law seeking to avoid unnecessary constitutional determinations even if we had jurisdiction in this case, I find it inexplicable why the majority has chosen to use this vehicle to embark on an excursion into Younger waters not yet fully charted. Although it will undoubtedly engage the interest of the law review commentators, it is clearly not necessary to the disposition of this appeal.
 
 
 
 *
 Honorable Maryanne Trump Barry is a United States District Court Judge for the District of New Jersey sitting by designation
 
 
 [1]
 Appellees contend that the district court's abstention order was also warranted under Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); and Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In light of our disposition of the case, we need not decide whether these cases provide a basis for affirming the district court's order, except that an adequate response to Judge Sloviter's dissent requires us to discuss the availability of Pullman abstention in this case
 
 
 [2]
 Judge Sloviter reads New Orleans Public Service as counseling restraint in application of Younger to the case at bar. But that case, which held that Younger abstention is not appropriate merely because a federal court is called on to review non-judicial, legislative state action, is a far cry from Schall's effort to void the state court judgment in the instant case
 
 
 [3]
 Judge Sloviter suggests that there is some dispute in this case over "the policies and practices of the Allegheny County Prothonotary's and Sheriff's Office." Post Typescript at 116. Uncertainty about this issue, however, is irrelevant for Pullman abstention purposes. As we explain in the text below, unsettled factual issues--such as an office's policies and practices--do not provide a basis for Pullman abstention. Absent from Judge Sloviter's discussion is any identification of an unsettled question of state law