NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4131
_____

LORI ROTH, Administratrix of the Estate of Evan Michael Roth, Deceased

v.

CITY OF HERMITAGE; BRIAN E. BLAIR, Hermitage Chief of Police;
ERIC JEWELL, Deputy Chief-Investigations
a/k/a Paul Eric Jewell; ADAM PICCIRILLO, Deputy Chief-Operations;
DETECTIVE TODD SAYLOR, DETECTIVE JOHN MILLER;
CORPORAL DANIEL K. YOUNG; OFFICE PHILLIP SCIARETTA;
OFFICE CHAD NYCH; OFFICER CHRISTOPHER MORSE;
J. BRADLEY MCGONIGLE, Mercer County Coroner &
Medical Examiner

J. Bradley McGonigle, Mercer County
Coroner & Medical Examiner,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-cv-00410)
District Judge:  Hon. Cathy Bissoon
_____

Submitted Under Third Circuit LAR 34.1(a)
September 6, 2017

Before:  CHAGARES, JORDAN, and HARDIMAN, *Circuit Judges.*

(Filed: September 8, 2017)

———————

OPINION*

———————

JORDAN, *Circuit Judge*

This case involves allegations of a complicated conspiracy, but the issue before us on appeal is relatively simple – whether the District Court erred in failing to consider a qualified immunity defense before dismissing the Plaintiff's claims on the merits without prejudice. We conclude there was error and therefore will vacate and remand.

## I. BACKGROUND

Michael Roth was, tragically, found dead in a friend's swimming pool after he attended a party at the friend's home. Lori Roth, Michael's mother and the administratrix of his estate, argues that police insufficiently investigated the circumstances of his death. At the time of Michael's death, Appellant J. Bradley McGonigle was the Mercer County Coroner and Medical Examiner. He directed Dr. Eric Vey to conduct an autopsy on Michael. The autopsy results were "consistent with drowning" and suggested that Michael "sustained a neck fracture" before drowning. (App. at 9.) After Dr. Vey issued his report, which said that the drowning occurred as a result of a "mishap," McGonigle did not conduct a further inquest into how or when Michael died, as Roth claims he was required to do. (App. at 9-10.)

—————————————

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Roth filed this lawsuit against the City of Hermitage, several Hermitage police officers, and other city officials (collectively the "City Defendants"), as well as against McGonigle. She claims, as summarized by the District Court, that the lack of an adequate investigation violated "her federal constitutional right of access to the courts" and "deprived [her] of the opportunity to seek meaningful judicial redress for her son's death in the form of a state-court wrongful death action." (App. at 10.) And yet Roth litigated to a successful conclusion a wrongful death action against the family that hosted the ill-fated pool party, obtaining a more than $100,000 settlement. She is also pursuing a second wrongful death action against 21 individuals who were present at the party that night.

In this case, the City Defendants and McGonigle filed separate motions to dismiss. McGonigle argued that Roth failed to state a claim against him and also that he was entitled to qualified immunity. The District Court granted the motions to dismiss, concluding that Roth had not stated a cognizable denial of access to the courts claim because she had not alleged that there was an effort to cover-up or conceal information. Despite that conclusion, the Court also stated that, "to the extent that [Roth] claims that she cannot meaningfully litigate her pending state court action, that claim is premature." (App. at 16.) So the Court granted dismissal without prejudice and stayed the action "pending the resolution of [Roth's] state court action." (App. at 17.) Specifically with regard to the claims against McGonigle, the District Court noted that the claims would be dismissed without prejudice because "there is no allegation that Defendant McGonigle (or any other Defendant) engaged in active concealment or destruction of evidence that

3

could give rise to a viable denial of access to the courts claim." (App. at 20.) The District Court was silent with regard to McGonigle's qualified immunity defense.

McGonigle filed this timely appeal, arguing that the District Court erred by failing to consider his request for qualified immunity.

## II. DISCUSSION[1]

We asked the parties to brief whether we have jurisdiction despite the District Court's entry of a stay. We conclude that we do have jurisdiction and that the District Court erred by not considering McGonigle's qualified immunity defense.

An officer's entitlement to dismissal on the basis of qualified immunity is not merely based on "the individual's desire to avoid the personal costs and aggravations of presenting a defense." *In re Montgomery Cty.*, 215 F.3d 367, 374 (3d Cir. 2000). Instead, "the right not to stand trial is based on far broader concerns for avoiding the social costs of the underlying litigation, and for ensuring and preserving the effectiveness of government." *Id*. at 374-75. Accordingly, an order implicating a qualified immunity defense, even implicitly, can be appealable. *Id.* at 374 (holding that "we have interlocutory jurisdiction to review an implied denial" of qualified immunity).

In this case, the District Court effectively (if temporarily) denied qualified immunity because it ruled that additional factual development was needed in state court before the Court could fully resolve the merits of Roth's claim. Therefore, by implication it concluded that qualified immunity could not be granted on the current record, and that decision was immediately appealable under the collateral order doctrine. *George v.*

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331.

*Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013). That is true even though the District Court's stay order does not immediately subject McGonigle to "the personal costs and aggravations of presenting a defense." *In re Montgomery Cty.*, 215 F.3d at 374. The order still subjects him to the continued threat of future litigation. Accordingly, we have jurisdiction.[2]

The District Court was required to rule on the qualified immunity defense before dismissing without prejudice and granting a stay. We have emphasized that "a district court must avail itself of the procedures available under the Federal Rules to facilitate an early resolution of the qualified immunity issue." *Thomas v. Indep. Twp.*, 463 F.3d 285, 300 (3d Cir. 2006). Or, in other words, "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense ... so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Id.* (alteration in original) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998)). Because the District Court did not consider qualified immunity, McGonigle did not benefit from "the substance of the qualified immunity defense," *id.* (quoting *Crawford-El*, 523 U.S. at 597), and remains potentially liable in a future suit.

---

[2] Roth argues that the stay order is not appealable since it was a procedural stay and did not "require all or an essential part of the federal suit to be litigated in a state forum." *Schall v. Joyce*, 885 F.2d 101, 105 (3d Cir. 1989) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983)). But McGonigle is not challenging the decision to issue a stay itself; he is challenging the decision to enter a stay without first considering the question of qualified immunity. And the implicit denial of qualified immunity is immediately appealable, even if the decision to enter a stay is not.

Failing to consider the qualified immunity defense before dismissing without prejudice on the merits was error because the District Court failed to resolve a "motion asserting qualified immunity … at the earliest possible stage in the litigation." *Id.* at 302; *see also James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (recognizing that we had previously remanded a case to the district court "for an explanation as to why it denied qualified immunity" when the court rejected a motion to dismiss without discussing qualified immunity). Accordingly, we will remand to allow the District Court to consider whether the claims against McGonigle should be dismissed with prejudice on the basis of qualified immunity.

## III. CONCLUSION

For the foregoing reasons, we will vacate the order of dismissal and remand to allow the District Court to consider McGonigle's qualified immunity defense.

6