282 F.3d 204
 Kenneth ZAHL, Appellant,
v.
Douglas J. HARPER, in his official capacity as Senior Deputy Attorney General of the state of New Jersey and individually, solely to the extent of exposing his person to the equitable jurisdiction of this Court; The New Jersey Department of Law and Public Safety; Division of Consumer Affairs; State Board of Medical Examiners; John J. Farmer, in his official capacity as Attorney General of the State of New Jersey and individually, solely to the extent of exposing his person to the equitable jurisdiction of the Court; The State of New Jersey.
 No. 01-1817.
 United States Court of Appeals, Third Circuit.
 Submitted Under Third Circuit LAR 34.1(a) January 18, 2002.
 Filed: February 26, 2002.
 
 COPYRIGHT MATERIAL OMITTED Robert J. Conroy, Kern, Augustine, Conroy & Schoppmann, Bridgewater, NJ, Counsel for Appellant.
 Jeffrey Burstein, Office of Attorney General of New Jersey, Division of Law, Newark, NJ, Counsel for Appellees.
 Before SCIRICA, ROSENN, Circuit Judges, and KANE,* District Judge.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This appeal, in an action seeking federal injunctive relief from state disciplinary proceedings against a medical practitioner, raises important questions concerning the application of the doctrines of preemption and abstention. The New Jersey State Attorney General (Attorney General) instituted disciplinary proceedings against Kenneth Zahl, M.D. (Zahl), alleging, inter alia, violations of the federal Medicare statute and regulations. Zahl sought an injunction in the United States District Court for the District of New Jersey to restrain the Attorney General from pursuing adjudication of two counts of the eight-count administrative Complaint (Complaint) in the pending action before the New Jersey State Board of Medical Examiners (Board). Zahl asserts that the two counts he challenges, involving allegations of Medicare fraud, are preempted by 42 U.S.C. §§ 405(g) and (h). Therefore, he contends that the Board lacks jurisdiction over the proceedings pending against him. The District Court dismissed the complaint on grounds of abstention. We affirm.
 
 I.
 
 2
 Zahl, a Board-Certified anesthesiologist licensed by the State of New Jersey to practice medicine and surgery, founded the Ridgedale Surgery Center in Cedar Knolls, New Jersey, and became its medical director. The surgery center[1] carries Medicare certification. There, Zahl frequently performed a procedure known as "nerve block," a form of local anesthesia administered by injection. Unlike general anesthesia, where the patient is unconscious during surgery, the anesthesiologist need not be in the patient's presence throughout the operation or other medical procedure. Typically, Zahl would have one patient in the operating room, undergoing a procedure performed by a surgeon, while Zahl simultaneously administered nerve block to another patient. Thus, while administering "nerve blocks," Zahl would usually treat two patients simultaneously, administering and monitoring one patient being prepared for surgery, and monitoring another patient undergoing surgery. Counts One and Two of the Attorney General's Complaint allege improprieties in Zahl's method for billing "nerve blocks" under Medicare.
 
 
 3
 The billing issue involves payments for medical services under Medicare Part B. Medicare Part B is administered by the United States Department of Health and Human Services (HHS). HHS employs non-governmental contractors called "carriers," who review and pay Medicare claims on its behalf. For the period relevant to this case through March 1999, Xact Medicare Services (Xact) served as New Jersey's Part B carrier. From March 1999 onward, Empire Medicare Services has been New Jersey's Part B carrier.
 
 
 4
 Medicare uses a system of codes known as "CPT Codes" (CPT). Each CPT describes a different medical procedure. Zahl believes that nerve blocks should not be billed on the basis of time spent, but that the proper billing method is to charge for each procedure performed. Thus, Zahl billed separately for each nerve block. In late 1995, Xact subjected Zahl's billing method to a "focused review." As a result, Zahl was ordered to refund money paid for approximately 30 nerve blocks and to re-bill the procedures under a CPT relating to time spent. Zahl complied, but wrote a letter to Xact stating that he would bill for overlapping time for each nerve block he performed. Xact never responded, and Zahl continued to bill for overlapping time. Eventually, Xact investigated Zahl's billing method and, inter alia, made a preliminary finding that he had improperly billed for overlapping, concurrent time periods.
 
 
 5
 In August 1999, the Attorney General filed a Complaint with the Board seeking to suspend Zahl's license to practice medicine and surgery in New Jersey. The first two counts of the Complaint allege that the method Zahl used to bill "nerve blocks" amounted to Medicare fraud, and thus violated N.J. Stat. Ann. § 45:1-21(b) and (e).[2] The Attorney General, believing that there were no genuine issues of material fact arising from the allegations, moved for a Board Order granting summary decision. The Board required Zahl to appear before it to explain why the Board should not enter an Order granting the Attorney General's motion for summary decision. Zahl denied the substantive charges and the Board denied the motion for summary judgment. It referred the case to the New Jersey Office of Administrative Law (OAL) for plenary hearing.
 
 
 6
 The Attorney General filed a motion with the Administrative Law Judge (ALJ) for partial summary decision on, inter alia, Counts One and Two. Zahl filed a cross-motion to dismiss the counts. Although oral argument on the motion and cross-motion was held in April 2001, the ALJ has not yet rendered his decision.
 
 
 7
 In March 2001, Zahl filed a Complaint with the United States District Court seeking an injunction to restrain the Board from pursuing the administrative prosecution of him based upon any allegations of violation of the federal Medicare statute or its regulations. The plaintiff contended that the federal Government's enactment of the Medicare statutes preempted the state action and that pursuant to 42 U.S.C. § 405(h), as made applicable to Medicare claims by 42 U.S.C. § 1395ii, 42 U.S.C. § 405(g) provides the exclusive jurisdictional grant for judicial review of Medicare claims. He, therefore, asserts that as a matter of federal law, the defendants lack jurisdiction to take action against him or his license to practice medicine until the Secretary of Health and Human Services has made a determination that has been reviewed by the federal courts.
 
 
 8
 The District Court concluded that the New Jersey Attorney General is not pursuing a claim under Medicare or challenging a Medicare regulation or practice. The court rejected Zahl's contentions that Congress had preempted the field so as to preclude the state agencies "from proceeding with their disciplinary proceedings raising issues under Medicare law." Accordingly, it dismissed the complaint on the ground of abstention.
 
 II.
 
 9
 On appeal, Zahl argues that the District Court erred by abstaining. We review the District Court's decision to abstain for abuse of discretion. Schall v. Joyce, 885 F.2d 101, 106 (3d Cir.1989). We exercise plenary review, however, over the underlying legal determinations of whether the abstention requirements have been met. FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 843 (3d Cir.1996).
 
 A.
 
 10
 The District Court abstained under principles promulgated by the United States Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In Younger, the federal District Court had enjoined Younger, the district attorney of Los Angeles County, from prosecuting Harris under a constitutionally-suspect state statute. Id. The Supreme Court reversed, finding the injunction "a violation of the national policy forbidding federal courts[from] stay[ing] or enjoin[ing] pending state court proceedings except under special circumstances." Id. at 41, 91 S.Ct. 746.
 
 
 11
 Although Younger involved a state court criminal proceeding, the national policy against enjoining pending state court proceedings has since been extended to noncriminal judicial proceedings. E.g., Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) ("The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved."). Administrative proceedings are also subject to Younger abstention. E.g., Id. (abstention when pending state bar disciplinary proceeding); Williams v. Red Bank Bd. of Educ., 662 F.2d 1008 (3d Cir.1981) (abstention when pending state administrative tenure proceeding against school teacher).
 
 
 12
 The United States Supreme Court has laid out a three-part test for determining whether abstention is appropriate. Abstention is appropriate when: (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional challenges. Garden State, 457 U.S. at 432, 102 S.Ct. 2515. Even if this test is met, however, abstention is not appropriate if the plaintiff establishes that "extraordinary circumstances exist ... such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." Schall v. Joyce, 885 F.2d 101, 106 (3d Cir.1989).
 
 
 13
 Aside from incorrectly asserting that his is not a constitutional challenge, Zahl does not challenge the District Court's holding that the three-part test has been met. We briefly apply the Garden State test to this case. The state proceedings are clearly judicial in nature, and therefore meet the first part of the test. The proceedings are being conducted before an ALJ pursuant to New Jersey's Uniform Enforcement Act (UEA), N.J. Stat. Ann. §§ 45:1-14 to 45:1-27, and New Jersey's Administrative Procedure Act (APA), N.J. Stat. Ann. §§ 52:14B-1 to 52:14B-24. State administrative proceedings such as this have long been recognized as judicial in nature. E.g., Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (state civil rights commission proceeding judicial in nature); Garden State, 457 U.S. at 433-34, 102 S.Ct. 2515 (bar disciplinary proceeding judicial in nature). Only proceedings that fail to "rise to the level of `adjudication'" are considered inadequate for purposes of abstention. Williams, 662 F.2d at 1021. Here, the parties are in the midst of an administrative proceeding conducted pursuant to New Jersey's regulatory structure. Zahl has the right to appellate review by state courts if he wishes to challenge the final decision of the Board. N.J. Ct. R. 2:2-3(a)(2). Indisputably, these are judicial proceedings.
 
 
 14
 The second part of the Garden State test is also met. In Garden State, the United States Supreme Court recognized the extremely important state interest in "maintaining and assuring the professional conduct of the attorneys it licenses." 457 U.S. at 434, 102 S.Ct. 2515. As the District Court noted in this case, "[e]qually important to the public as a whole is regulation of the practice of medicine." Other circuits, too, have recognized the obvious interest states have in regulating the practice of medicine. E.g., Doe v. Conn., Dep't of Health Servs., 75 F.3d 81, 85 (2d Cir.1996) (ruling state "legislative scheme for disciplining doctors serves important and obvious public health objectives"); Bettencourt v. Bd. of Registration in Med., 904 F.2d 772, 778 (1st Cir.1990) (ruling that enforcing proper standards of medical licensing "obviously implicate[s] important state interests"). Thus, the New Jersey disciplinary proceedings implicate important state interests, particularly during these times of heightened health concerns.
 
 
 15
 Finally, we reach the third part of the Garden State test. Zahl emphasizes that this part of the test is not met because, "Younger speaks of abstention only in the case of a collateral Constitutional challenge" and that abstention is therefore inappropriate here because he "has not raised a Constitutional challenge to the state's actions." Zahl, however, misapprehends the nature of his challenge. The gravamen of his Complaint is that the New Jersey administrative action is preempted by Act of Congress. Preemption is based on the Supremacy Clause of the United States Constitution.[3] Hawkins v. Leslie's Pool Mart, Inc., 184 F.3d 244, 247 (1999). Therefore, Zahl's claim does indeed raise a constitutional challenge, which draws the abstention doctrine to the forefront of our consideration.
 
 
 16
 The third part of the Garden State test is met because Zahl can assert his federal preemption claim in the state administrative proceeding. Moreover, he has an automatic right of appeal to the Appellate Division of the Superior Court of New Jersey, N.J. Ct. R. 2:2-3(a)(2), which is capable of reviewing Zahl's federal claims. This Court has noted that the third part of the Garden State test "is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination." O'Neill v. Philadelphia, 32 F.3d 785, 792 (3d Cir.1994). Zahl can assert his preemption claim in the administrative proceeding itself and, if necessary, he can have it reviewed by the New Jersey Appellate Division. Accordingly, the state proceedings in the instant case meet each of the aspects of the Garden State test.
 
 B.
 
 17
 Although we conclude that the Garden State abstention test has been satisfied, our inquiry is not complete. Abstention still may not be appropriate because Zahl's essential argument, though not couched in these terms, is that the state proceedings are preempted by federal law, and this constitutes an extraordinary circumstance counseling against abstention even if the Garden State test has been met. Olde Disc. Corp. v. Tupman, 1 F.3d 202, 212 (3d Cir.1993). In other words, Zahl argues that "the paramount federal interest in the orderly administration of the Medicare program outweighs any interest the State of New Jersey may have in disciplining physicians for alleged violation of the Medicare laws."
 
 
 18
 Cases involving preemption challenges under the Supremacy Clause are often inappropriate vehicles for abstention. Ky. W. Va. Gas Co. v. Pa. Pub. Util. Comm'n, 791 F.2d 1111, 1115-16 (3d Cir.1986). Although there is no absolute prohibition against abstaining whenever the Supremacy Clause is invoked, Ford Motor Co. v. Ins. Comm'r, 874 F.2d 926, 934 (3d Cir.1989), and claims of federal preemption per se are generally not entitled to more deference in the abstention calculus than other constitutional claims, Tupman, 1 F.3d at 214, the presence of such a claim requires us to balance the state interest served by abstention against the federal interest asserted to have usurped the state law. Ford Motor, 874 F.2d at 934.
 
 
 19
 In conducting this inquiry, we recognize that the notion of comity, so central to the abstention doctrine, "is not strained when a federal court cuts off state proceedings that entrench upon the federal domain." Id. (internal quotations omitted). Moreover, a determination of the propriety of abstention does not depend upon whether the preemption claim will ultimately prevail. Id. at 935 n. 12. The appropriateness of abstention is predicated solely "upon the significance of the federal interest invoked." Id.
 
 
 20
 We recognize that New Jersey has a heavy and traditional interest in regulating the practice of medicine within its borders. Regulating matters of health is among the historic police powers of a state. De Buono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). Because such regulation is primarily a matter of local concern, "`States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" Medtronic, Inc. v. Lohr, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 756, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)). New Jersey recognizes that a license to practice a profession "is not a basic individual right" and the right to practice medicine "is granted in the interest of the public." In re Polk License Revocation, 90 N.J. 550, 449 A.2d 7, 17 (1982). The state regulation of the medical profession is in the public interest; power to establish and enforce health standards "is a vital part of a state's police power." Brodie v. State Bd. of Med. Exam'rs, 177 N.J.Super. 523, 427 A.2d 104, 108 (1981)(quoting Barsky v. Bd. of Regents, 347 U.S. 442, 449, 74 S.Ct. 650, 98 L.Ed. 829 (1954)).
 
 
 21
 Against New Jersey's exceedingly strong interest in regulating the practice of medicine in its jurisdiction must be weighed what Zahl asserts is the federal interest in having the Secretary of HHS exclusively decide whether physicians have violated Medicare regulations. In support of his claim of an overbearing federal interest, Zahl notes that 42 U.S.C. § 405(h) precludes judicial review of claims arising under the Medicare statute until administrative remedies have been exhausted. He argues that this preclusion demonstrates the strong federal interest in having Medicare claims reviewed by the federal administrative process. Zahl further notes that "[t]he [United States] Supreme Court has construed the `claim arising under' language of section 405(h) broadly to encompass any claims in which `both the standing and the substantive basis for the presentation' of the claims is the Medicare Act." In re Univ. Med. Ctr., 973 F.2d 1065, 1073 (3d Cir.1992) (quoting Heckler v. Ringer, 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)) (quoting Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). Zahl therefore bravely concludes, without further analysis, that the Attorney General's claim in this case arises under the Medicare Act.
 
 
 22
 The District Court was not persuaded. It cogently observed that "[t]he fundamental flaw in[ Zahl's] reasoning is that the Attorney General is not pursuing a claim under Medicare or challenging a Medicare regulation or practice." Although the Attorney General's disciplinary claim is based on alleged violations of the Medicare statute and its regulations, his suit is brought for violations under N.J. Stat. Ann. § 45:1-17(c),[4] and not 42 U.S.C. § 405(h).
 
 
 23
 Moreover, the provisions of the Medicare Act on which Zahl relies offer no support for any federal interest in the Secretary of HHS to enforce Medicare violations. Although § 1395ff(a) provides that the determination of whether an individual is entitled to benefits under part A or part B of this subchapter "shall be made by the Secretary [of HHS]," 42 U.S.C. § 1395ff(a), an objective reading of the statute reveals that it obviously concerns determinations of individual entitlements to Medicare. Nothing in the statute evinces a congressional desire to have the Secretary of HHS make exclusive, or even any, determinations relating to disciplinary concerns of a physician for Medicare violations. Therefore, we perceive no federal interest in having the Secretary of HHS exclusively make such determinations.
 
 
 24
 Zahl relies heavily on Buckman Co. v. Plaintiffs' Legal Committee, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001), to support his position. Buckman involved plaintiffs seeking damages under state tort law for fraud against the Food and Drug Administration (FDA). Id. at 343, 121 S.Ct. 1012. The Supreme Court held that the state law product liability claim was impliedly preempted by the Federal Food, Drug, and Cosmetic Act (FDCA). Id. at 348, 121 S.Ct. 1012. The Court stated that "[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied such as to warrant a presumption against finding federal pre-emption of a state-law cause of action." Id. at 347, 121 S.Ct. 1012 (citation omitted) (internal quotations omitted). The Court contrasted Buckman with situations "implicating federalism concerns and the historic primacy of state regulation of matters of health and safety." Id. at 348, 121 S.Ct. 1012 (internal quotations omitted).
 
 
 25
 Here, in contrast to Buckman, the proceedings against Zahl are based upon the historic primacy of state regulation of matters of health and safety and only indirectly and tangentially affect federal interests. The state proceedings Zahl seeks to enjoin concern solely New Jersey's regulation of the licensing and behavior of its physicians. This is a matter of paramount state interest; Buckman is therefore not on point. Nor is this conclusion contrary to our previous decisions. Ford Motor involved balancing Pennsylvania's interest in regulating its insurance industry against the "unhindered enforcement of federal law." 874 F.2d at 934. The Pennsylvania statute at issue there precluded simultaneous ownership of an insurance company and a savings and loan institution. Id. at 930. Ford Motor raised serious questions of whether the state statute conflicted with federal law. Similar questions are not present here.
 
 III.
 
 26
 The District Court committed no error in concluding that the three-part Garden State abstention test has been satisfied. Because the state proceedings involve an extremely strong state interest with no countervailing federal concerns, we conclude that the balancing test weighs heavily in favor of abstention. New Jersey has a traditional obligation to regulate the practice of medicine. Moreover, the operation of the federal Medicare scheme is not put at risk. If, in carrying out its obligations, New Jersey determines that a physician has or has not violated Medicare regulations, the purposes of Medicare are promoted and not subverted. Therefore, the District Court committed no error in its decision to abstain. The order of the District Court will be affirmed. Costs taxed against the appellant.
 
 
 
 Notes:
 
 
 *
 Hon. Yvette Kane, United States District Court for the Middle District of Pennsylvania, Sitting by Designation
 
 
 [1]
 The Center is a facility where surgery is performed on patients without the necessity of hospitalization. Patients walk in, receive medical services, have a brief recovery period, and walk out
 
 
 [2]
 The relevant statutory text provides in pertinent part that a board may suspend or revoke any license issued by it upon proof that the holder of such license
 b. Has engaged in the use or employment of dishonesty, fraud, deception, misrepresentation, false promise or false pretense;
 . . . . .
 e. Has engaged in professional or occupational misconduct as may be determined by the board....
 N.J. Stat. Ann. § 45:1-21(b), (e).
 
 
 [3]
 The Supremacy Clause provides: "This Constitution, and the Laws of the United States ... shall be the supreme Law of the Land...." U.S. CONST. art. VI, cl. 2
 
 
 [4]
 The statute provides that the Attorney General, "[a]fter a full consideration of all relevant facts and the applicable law, may direct the initiation of any appropriate enforcement action by a professional ... licensing board." N.J. STAT. ANN. § 45:1-17(c)