OPINION
PER CURIAM.
Isadore and Dorothy Kopstein (“the Kopsteins”) appeal pro se from a District Court order granting a motion by Independence Blue Cross (“IBC”) to dismiss their amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, we will affirm the District Court’s order on alternative grounds.
I. Background
The Kopsteins participate in IBC’s “Personal Choice 65,” a program providing el *262 derly individuals health insurance and prescription drug benefit coverage through Medicare. In January 2008, the Kopsteins initiated an action against IBC in Philadelphia Municipal Court, concerning IBC’s provision of the Kopsteins’ 2007 Medicare Part D prescription drug coverage.
In their complaint, the Kopsteins argue that IBC intentionally provided misleading information concerning their benefits, in violation of the Medicare Act, IBC’s contract with the Kopsteins, and “some of [IBC’s] own rules.” Specifically, the Kop-steins raise two claims concerning Medicare Part D’s so-called “donut hole” coverage gap[1]: (1) a claim that IBC “knowingly included the entire cost of their contribution in plaintiffs’ $2,200.00 initial coverage, forcing them to incur expenses of $2,577.00 above what was necessary”; and (2) a claim that IBC “insisted that they pay $3,850.00 while in the coverage gap (donut hole) ... in direct violation of medicare rules that clearly state ‘the most you have to pay out-of-pocket in the coverage gap (donut hole) is $3,051.25.’ ”[2] In addition, the Kopsteins argue that IBC negotiated with only one drug chain, Walgreen’s, and the resulting prescription drug prices were not competitive, causing them to incur $1,102.00 in overpayment costs. The Kop-steins seek damages of $4,559.75, plus costs.
IBC removed the case to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1441(a). In the removal notice, IBC argued that the Kopsteins’ complaint “call[s] into question IBC’s compliance with the federally mandated guidelines established by 42 U.S.C.A. § 1395w-101, et seq. and, therefore, plaintiffs’ allegations constitute claims ‘arising under the laws of the United States,’ of which this Court has original jurisdiction under 28 U.S.C. § 1331.... ” Although the Kopsteins sought remand to Municipal Court, the District Court denied their motion. The District Court held that “[t]he rules of Medicare Part D, enacted by Congress as part of the Social Security Act, are federal law. See 42 U.S.C. § 1395w-101 et seq. *263 We therefore find that Plaintiffs’ Complaint raises a substantial federal question, bringing this case squarely within the Court’s jurisdiction.” See 28 U.S.C. § 1447.
In August 2008, the Kopsteins moved to amend their complaint to add a claim that IBC retaliated against them for filing their lawsuit. Specifically, they claim that in March 2008, IBC sent the Kopsteins letters threatening to terminate their coverage if they did not timely pay premiums owed on their accounts. The Kopsteins contend that they paid their premiums before the date of IBC’s letters, that they were current on their monthly premiums and always made payment within a few days of the due date,[3] and that IBC intentionally delayed posting the payments to their accounts to justify sending the threatening letters. In addition, the Kop-steins claim that IBC improperly denied Mr. Kopstein insurance coverage for emergency room services.
On November 3, 2008, the District Court entered an order granting IBC’s motion to dismiss the Kopsteins’ amended complaint for failure to state a claim upon which relief can be granted.[4] See Fed.R.Civ.P. 12(b)(6). Proceeding pro se, the Kopsteins timely filed the instant appeal.[5]
II. Analysis
We have stated that “every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.” Spring Garden Associates, L.P. v. Resolution Trust Corp., 26 F.3d 412, 415 (3d Cir.1994) (quoting Employers Ins. of Wausau v. Crown Cork & Seal Co., 905 F.2d 42 (3d Cir.1990)). Therefore, although the District Court did not address it, we will consider the issue of subject matter jurisdiction. See, e.g., Dep’t of Pub. Welfare v. Markiewicz, 930 F.2d 262, 266 (3d Cir.1991). We exercise plenary review in determining whether the District Court had subject matter jurisdiction. Nat’l Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 383 (3d Cir.1994).
The District Court concluded that subject matter jurisdiction over the Kopsteins’ claims arose under 42 U.S.C. § 1331. We disagree. Federal question jurisdiction under § 1331 generally is not available for claims arising under the Medicare Act.[6] Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 11, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000); 42 U.S.C. § 405(h)[7]; see also Fanning v. United States, 346 F.3d 386, 401 (3d Cir.2003) (In assessing jurisdiction, “[t]he appropriate inquiry is *264 whether the Medicare Act provides both the standing and the substantive basis for their contentions.”).
Rather, “the sole avenue for judicial review” for claims arising under the Medicare Act is through 42 U.S.C. § 405(g).[8] See Heckler v. Ringer, 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). That section provides that a plaintiff may initiate an action in the District Court only after obtaining a “final decision of the [Secretary of Health and Human Services] made after a hearing.... ” 42 U.S.C. § 405(g). A final agency ruling is therefore “central to the requisite grant of subject-matter jurisdiction” under the Medicare Act. See Weinberger v. Salfi, 422 U.S. 749, 764, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).
Accordingly, to proceed in the District Court, the Kopsteins were required to first exhaust the administrative review channels that the Medicare Act expressly contemplates, see Illinois Council on Long Term Care, 529 U.S. at 5, 8, 120 S.Ct. 1084,[9] and obtain a final agency ruling subject to judicial review. See 42 U.S.C. §§ 405(g), (h). Because the Kopsteins did not do so, the District Court lacked subject matter jurisdiction over their claims.
The Kopsteins do not dispute that they did not obtain a final agency ruling. Rather, they contend that their particular claims are not of the type that may proceed through the Medicare Act’s administrative review channels. The Kopsteins state that “IBC’s internal administrative procedures are limited to appeals involving quality of care, cleanliness in doctors’ offices, how beneficiaries are treated by doctors, etc.” However, the Kopsteins have provided no support for the argument that administrative review of their particular claims did not exist or was not available, and based upon our review of the record, we cannot reach such a conclusion.
Finally, the Kopsteins’ amended complaint may arguably be read to raise state law causes of action, such as breach of contract, breach of fiduciary duty, or violation of state consumer protection statutes. We do not consider whether the Kopsteins have raised any viable state law cause of action not preempted by, or subject to, the terms of the Medicare Act. See, e.g., Zahl v. Harper, 282 F.3d 204, 211 (3d Cir.2002) (abstaining from exercise of federal jurisdiction under Medicare Act so state court could address state law issues concerning billing fraud); but see Uhm v. Humana Inc., 540 F.3d 980, 991 (9th Cir.2008) (concluding that state law consumer protection claims concerning allegedly deceptive Medicare marketing materials were preempted by the Medicare Act). We merely conclude that, because the Kop-steins’ amended complaint did not raise a cognizable federal cause of action, the District Court also properly dismissed any state law claims. See 28 U.S.C. § 1367(c)(3).
III. Conclusion
We sympathize with the Kopsteins’ obvious frustration in navigating the complexities of the Medicare Part D prescription drug program. However, for the Kop-steins to proceed in federal court, they *265 were required to follow the Medicare Act’s administrative review channels and obtain a final agency ruling. See 42 U.S.C. § 405(g), (h); 42 C.F.R. § 423.630©. Because a final agency ruling is a prerequisite to federal jurisdiction over Medicare Act claims, see Weinberger, 422 U.S. at 764, 95 S.Ct. 2457, the District Court properly dismissed the Kopsteins’ amended complaint.
For the foregoing reasons, we will affirm the District Court’s order. The motion for oral argument is denied as moot.

. Under Medicare's Part D prescription drug program, the "donut hole” is a gap in prescription drug coverage between the initial coverage limit and the catastrophic coverage threshold. To summarize: In a given year, before an individual reaches the initial coverage limit, he or she must pay monthly premiums, a deductible, see 42 U.S.C. § 1395w-102(b)(1)(A), and a co-payment for each prescription (generally, 25% of the prescription’s cost), see 42 U.S.C. § 1395w-102(b)(2)(A). When the total amount spent by the individual and the insurance company reaches Medicare's specified initial coverage limit for that year, see 42 U.S.C. § 1395w-102(b)(3)(A), the individual falls into the so-called "donut hole.” At that stage, the beneficiary must pay, in addition to the cost of the monthly premiums, 100% of the cost of prescription drugs. When the individual's total out-of-pocket expenditures reach a specified amount, the "donut hole” ends and catastrophic coverage applies for the remainder of that year. See 42 U.S.C. § 1395w-102(b)(4)(B).

. These claims at first blush appear to be coverage disputes, and the District Court interpreted them as such. However, on appeal, the Kopsteins state that they do not dispute IBC’s coverage calculations. Rather, they argue that “this is a matter of Defendant deliberately using confusing and conflicting language.” The Kopsteins contend that IBC intentionally misled them because IBC's program documents can be read to indicate that: (1) the initial coverage limit is calculated by tallying the amount spent by the beneficiaiy alone rather than the amount spent by the beneficiaiy and the insurer together; and (2) to be eligible for catastrophic coverage, the maximum out-of-pocket expenditure is $3,051.25 rather than $3,850. Essentially, as we understand their claims, the Kopsteins contend that IBC's program documents are capable of at least two plausible interpretations and IBC employed the interpretation less favorable to the Kopsteins.

. The Kopsteins concede that they "occasionally” sent checks after the due date. However, they argue that they made full payment prior to the date of the letters in question.

. The District Court entered an amendment on November 26, 2008, correcting one of the dates in the original dismissal order.

. In the District Court, the Kopsteins sought and were granted an extension of time in which to file their notice of appeal. See Fed. R.App. P. 4(a)(5).

. The Supreme Court carved a narrow exception, not applicable here, that permits § 1331 jurisdiction for certain challenges to the validity of Medicare statutes and regulations. See Bowen v. Michigan Acad, of Family Physicians, 476 U.S. 667, 680, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

.Under 42 U.S.C. § 405(h), "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.” § 405(h) is a provision of the Social Security Act made applicable to the Medicare Act by 42 U.S.C. § 1395Ü, which substitutes the Secretary of Health and Human Services for the Commissioner of Social Security.

. 42 U.S.C. § 405(g) is a provision of the Social Security Act made applicable to the Medicare Act by 42 U.S.C. § 1395ff(b)(l)(A).

. Under 42 U.S.C. § 405(h), ”[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.” § 405(h) is a provision of the Social Security Act made applicable to the Medicare Act by 42 U.S.C. § 1395Ü, which substitutes the Secretary of Health and Human Services for the Commissioner of Social Security.